This medical malpractice action was brought by Donna C. Sprinkle and her husband *Page 776 
Steve Sprinkle against Complete Family Care and Dr. Marlin Gill (together hereinafter referred to as "Dr. Gill"). At trial Steve Sprinkle voluntarily dismissed his claim, which had alleged loss of consortium. The jury returned a $75,000 verdict for Donna Sprinkle. The trial court denied Dr. Gill's motion for a judgment notwithstanding the verdict or for a new trial and entered a judgment on the verdict.
A jury's verdict is presumed correct and will not be disturbed unless it is plainly erroneous or manifestly unjust.Alpine Bay Resorts, Inc. v. Wyatt, 539 So.2d 160, 162 (Ala. 1988). In addition, a judgment based upon a jury verdict and sustained by the denial of a new trial will not be reversed unless it is plainly and palpably wrong. Ashbee v. Brock,510 So.2d 214 (Ala. 1987). Because the jury returned a verdict for Sprinkle, any disputed questions of fact must be resolved in her favor, and we must presume that the jury drew from the facts any reasonable inferences necessary to support its verdict. State Farm Auto. Ins. Co. v. Morris, 612 So.2d 440,443 (Ala. 1993). In short, in reviewing a judgment based upon a jury verdict, this Court must review the record in a light most favorable to the appellee. Continental Cas. Ins. Co. v.McDonald, 567 So.2d 1208, 1211 (Ala. 1990).
On March 4, 1991, Donna Sprinkle went to see Dr. Gill, complaining of back pain. She stated that her last menstrual period had been in January 1991 and that she was not on birth control medication. Before Dr. Gill examined her for her back problem, he had a urine pregnancy test performed. The test result was negative. Sprinkle told Dr. Gill that during her first pregnancy a urine pregnancy test had been negative but that the follow-up blood serum test had been positive. Dr. Gill had a blood serum pregnancy test conducted, and it too was negative. Dr. Gill then ordered X-rays, a CT scan, and medications to treat the back pain that Sprinkle complained of. After Dr. Gill discovered that she might have a bulging disc, Sprinkle saw an orthopedic surgeon, who also ordered X-rays and a myelogram. Sprinkle was then referred to a neurologist and an obstetrician/gynecologist to determine whether her back pain was associated with bladder problems. On April 4, 1991, Sprinkle was admitted to a hospital to undergo a cystoscopy. On the morning of the surgery, the urologist informed Sprinkle that the cystoscopy would not be performed because she was pregnant. Sprinkle went to see her obstetrician to discuss the possible effects that the medication and X-rays would have on the fetus. On April 10, 1991, Sprinkle terminated the pregnancy. She then filed this medical malpractice action against Dr. Gill, contending that Dr. Gill had breached the standard of care governing serum pregnancy testing and that she, therefore, had obtained an abortion because of her fear that the fetus might be deformed because of the X-rays and medications she had undergone.
The pregnancy tests performed by Dr. Gill were with an OPTITEC HCG kit. Both tests were properly performed, and both tests were negative. This kit allows use of either urine or serum to test for pregnancy. The serum test is more sensitive than the urine test. The test detects the human gonadotropin hormone (HCG) that is secreted from the uterus by the implanted ovum. The HCG will show up in both the blood and the urine of a pregnant woman. The OPTITEC HCG kit can detect HCG ten days after a woman becomes pregnant.
Dr. Michael D. Goodlett, testifying as an expert on behalf of Dr. Gill, stated that Dr. Gill met the standard of care required of a board-certified family practitioner in the national medical community by ruling out pregnancy after performing both a urine and a blood serum pregnancy test. Dr. Goodlett stated that Dr. Gill's conclusion that Sprinkle was not pregnant, reached after he had received the results of both a negative serum test and a negative urine test, was reasonable.
Sprinkle offered no expert testimony to establish any standard of care. Rather, she submitted the OPTITEC HCG kit manual; it stated in part that "[i]f a negative reaction is obtained and pregnancy is suspected, the test should be repeated on another specimen in 48 hours." Further, Sprinkle relied on Dr. Gill's interrogatory answers, agreeing that the standard of care "mandates compliance *Page 777 
by said practitioner with the information, requirements, recommendations, limitations and procedures set forth in the OPTITEC HCG brochure when testing a patient for pregnancy via OPTITEC HCG kit."
In response to the statement in the manual, Dr. Goodlett testified that the statement "deal[s] with someone who you strongly suspect is pregnant," and he said "given the time frame of this, . . . the fact that both tests were negative over a prolonged time since [Sprinkle's] last period doesn't necessarily apply to this scenario."
Doctors have the legal duty to exercise the degree of care, diligence, and skill that reasonably competent physicians in the national medical community would ordinarily exercise when acting in the same or similar circumstances. Ala. Code 1975, § 6-5-484; Bradford v. McGee, 534 So.2d 1076 (Ala. 1988). To recover damages for a breach of this duty, the plaintiff must produce evidence that establishes 1) the appropriate standard of care, 2) the doctor's deviation from that standard, and 3) a proximate causal connection between the doctor's act or omission constituting the breach and the injury sustained by the plaintiff. Bradford, supra.
To establish a physician's negligence, the plaintiff ordinarily must proffer expert medical testimony as to what is or is not the proper practice, treatment, or procedure. However, there are exceptions to this general rule. SeeHolt v. Godsil, 447 So.2d 191 (Ala. 1984). Specifically applicable here is the exception applicable where the plaintiff employs a recognized standard or authoritative medical text or treatise to prove what is or what is not proper practice.McMickens v. Callahan, 533 So.2d 579 (Ala. 1988).
As noted above, Sprinkle offered no expert testimony. Rather, she chose to rely on Dr. Gill's answers to interrogatories and offered the OPTITEC HCG brochure, which, in part, states, "If a negative reaction is obtained, and pregnancy is suspected, the test should be repeated on another specimen in 48 hours." Sprinkle contends that this statement from the brochure establishes a recognized standard. We agree, and we conclude that Dr. Gill breached this standard of care when he failed to repeat the test in 48 hours.
It is further undisputed that the medication and the number of X-rays that Sprinkle had were not recommended for pregnant women. Dr. Gill's own expert testified than none of the medicines and procedures that Sprinkle went through would be recommended for pregnant women. Further, this expert testified concerning the potential for birth defects as a result of the medicine and X-rays Sprinkle went through and stated that all the medicines and the X-rays would have been harmful to the fetus.
We have reviewed the record, and we hold that Sprinkle did offer the proof necessary to present her medical malpractice claim to the jury.
Dr. Gill also contends that the trial court erred in denying his motion for a new trial. Specifically, Dr. Gill contends that the trial court had erred in denying challenges for cause as to three jurors because, he says, the jurors volunteered doubts regarding their ability to be objective and impartial, and he contends that that error entitled him to a new trial. However, these jurors responded in the affirmative when specifically asked if they could base their verdict on the law and the evidence and be fair and impartial in this case. We have reviewed the series of questions and answers in the record, and we conclude that they disclose no potential for probable prejudice. See Kinard v. Carter, 518 So.2d 1248 (Ala. 1987). Therefore, we find no abuse of discretion.
We also find no merit in Dr. Gill's contention that one of the jurors failed to respond accurately to a particular question on voir dire. We have reviewed the record and do not find that this juror failed to properly answer that question or any other question.
AFFIRMED.
SHORES, HOUSTON, KENNEDY and COOK, JJ., concur.
HORNSBY, C.J., concurs in the result. *Page 778