The plaintiff, Marie B. Henson, appeals from a summary judgment entered in favor of the defendant, Mobile Infirmary Association ("the hospital"), in her action related to an incident in which Henson received burns during a magnetic resonance imaging ("MRI") test. Henson argues that the trial court erred in entering the summary judgment in favor of the hospital, because she says, she produced legally adequate evidence to rebut the hospital's prima facie showing of the absence of a genuine issue of material fact.
At the time of the incident, Henson was 72 years old and suffered chronic back problems. She had gone to the hospital for an MRI test to determine the source of her symptoms. An MRI test is a process whereby MRI equipment partially encloses the body and emits magnetic fields and a radio *Page 561 
frequency to "scan" areas of the body and produce a diagnostic image. The record indicates that Henson was burned during her MRI test, because of a reaction between the scanning emissions and metallic fibers in her "street clothes," specifically, a dress she was wearing during the test. According to the hospital, during an MRI test "[m]etal objects can . . . be a source of electrical conduction."
The record indicates that Henson's test session consisted of several scannings. Henson said in deposition testimony that she complained after each scanning that she was being burned. Both Henson and hospital personnel testified that after the final scan, hospital personnel examined Henson and discovered suspicious marks on her body, which later proved to be burns. The two hospital staff persons administering the MRI test, Mary Killam and Larry Toland, dispute, however, Henson's claim that she had complained of a burning sensation before the final scan had been done. Henson testified:
 "[W]hen it [the first scan] started — [after] two minutes when [Killam] got through she said, 'Are you all right Ms. Henson.' I said, 'But its burning me.' She said, 'Where?' I said, 'Under my right shoulder right shoulder is burning and so is my arm.' . . . [A]nd she didn't say anything else.
 "And [then] she said, 'Now we're going for about three minutes,' and they went for three minutes. And she said, 'Are you doing all right now?' I said, 'All but this burn'; I said, 'I am burning.' She said, 'What do you mean "burning"?' I said, 'Well, it feels like a red hot poker on my back.' And then she didn't answer. . . .
 ". . . [T]hen . . . she said, 'We are going for about six minutes this time.' And when that six minutes was up, she said, 'Well, how are you doing now?' I said, 'I am burning. My back is just burning terribly bad and so is my arm.' And she said, 'Well, we're going to have to wait about ten minutes for the computer to come back up,'[1] and when the computer came back up she came back and said, 'Now Ms. Henson, we're going to go on for about ten minutes and we'll be through.' And I said, 'Well, I don't know whether I can stand it or not.' I said, 'Every time this machine cranks up my back starts burning.' "
Henson sued the hospital, averring in count one of her complaint that the hospital negligently operated the MRI equipment by operating it with what she claimed was excessive intensity; averring in count two that the hospital had acted wantonly in continuing the MRI test after being notified by Henson that she was being burned; and averring in count three that the hospital had negligently prepared Henson for the MRI test by permitting her to remain in a "street clothes" garment that contained metallic fibers.[2]
As indicated, the trial court entered a summary judgment in favor of the hospital as to Henson's claims.
"Summary judgment is proper where there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Parrish v. Russell,569 So.2d 328, 330 (Ala. 1990); see Ala.R.Civ.P. 56(e). If the movant makes a prima facie showing that there is no genuine issue of material fact, then the burden shifts to the nonmovant to rebut that showing. Berner v. Caldwell, 543 So.2d 686 (Ala. 1989). In determining whether a nonmovant has rebutted a movant's showing on the nonmovant's claim of negligent medical malpractice, "the test is whether there was evidence that, when viewed most strongly in favor of the nonmovant . . ., is sufficient to establish that [the health care provider] was negligent and that [this] negligence was the probable cause of the injuries sustained. . . ." Parrish, 569 So.2d at 330.
In its motion for summary judgment, the hospital contended that Henson had failed to rebut its prima facie showing by not producing legally adequate evidence as to her claim that the hospital negligently prepared Henson for the MRI test, i.e., her claim that *Page 562 
before the test it negligently failed to take proper precautions regarding her clothing. Similarly, in support of its motion, the hospital filed in the trial court a memorandum discussing whether Henson had produced legally adequate evidence related to her claim that the hospital was negligent in allowing her to take the test in her "street clothes." Stated differently, the hospital's motion for summary judgment was directed toward count three of Henson's complaint, the count alleging that the hospital negligently prepared Henson for the test by not having her change out of her street clothes.
Accordingly, we observe at the outset that the trial court could not properly enter the summary judgment as to all of Henson's claims. Counts one and two of the complaint, alleging negligence in operating the MRI equipment and wantonness in failing to take timely action when Henson complained that she was being burned, were not before the trial court on the hospital's motion. As to these claims we reverse.
As to count three — alleging that the hospital breached the standard of care by not having her change out of her street clothes — the hospital argues that Henson failed to produce admissible expert medical evidence in support of her claim. Henson offered expert medical evidence, but the trial court struck it. The hospital argues also that even if that evidence had not been stricken it would have been legally inadequate to preclude a summary judgment in its favor.
Henson argues that this evidence was wrongly stricken as inadmissible, and that expert medical evidence was not required, in any event, in support of her claims.
We address first the question whether expert medical evidence was required as to the claim in question.
Generally, to support a claim of negligent medical malpractice, a plaintiff must produce admissible evidence from a medical expert showing what is and what is not proper medical procedure as to the matter in issue. See Tuscaloosa OrthopedicAppliance Co. v. Wyatt, 460 So.2d 156, 161 (Ala. 1984). However, this Court has recognized the following exceptions to the general rule requiring such evidence:
 "1) where a foreign instrumentality is found in the plaintiff's body following surgery; 2) where the injury complained of is in no way connected to the condition for which the plaintiff sought treatment; 3) where the plaintiff employs a recognized standard or authoritative medical text or treatise to prove what is or is not proper practice; and 4) where the plaintiff is himself or herself a medical expert qualified to evaluate the doctor's allegedly negligent conduct."
Holt v. Godsil, 447 So.2d 191, 192-93 (Ala. 1984). All of these exceptions are based on the premise that they represent situations where " 'the want of skill or lack of care was so apparent' that the average person does not need expert testimony to understand the malpractice. . . ." Loeb v.Cappelluzzo, 583 So.2d 1323, 1325 (Ala. 1991), quoting Rosemont,Inc. v. Marshall, 481 So.2d 1126 (Ala. 1985). Although Henson argues to the contrary, we conclude that the alleged lack of due care in preparing Henson for the MRI by permitting her to remain in her street clothes is not so apparent that laypersons would understand it. The risks posed by taking an MRI test in particular types of clothing and the proper method or methods for preparing patients, as to clothing, are matters properly addressed by medical experts. Stated simply, it cannot reasonably be said that persons of average intelligence would understand, in the absence of admissible expert testimony, what is or what is not proper dress for an MRI test. Accordingly, we hold that the general rule we have discussed applies in this case.[3]
Having determined that expert medical evidence was necessary as to the allegations in *Page 563 
count three, we now consider the evidence stricken by the trial court as inadmissible.
The hospital moved to strike the deposition testimony of Henson's medical expert, Dr. Larry Cohen, on the basis that Dr. Cohen was not qualified to testify as to matters of patient preparation, i.e., as to the matters involved in count three. Because we determine that Dr. Cohen's testimony, even if it had been admitted, would not have precluded the entry of a summary judgment in favor of the hospital as to count three, we do not address whether the trial court erred in striking this testimony. Henson's arguments and the record persuasively suggest that the trial court erred in striking this testimony; however, as our discussion will illustrate, any such error would be harmless error.[4]
Ala. Code 1975, § 6-5-484(a), provides: "In the case of a hospital rendering services to a patient, the hospital must use that degree of care, skill, and diligence used by hospitals generally in the community." We have held that the phrase "that degree of care, skill, and diligence used by hospitals generally in the community" refers to the national hospital community. Lamont v. Brookwood Health Services, Inc.,446 So.2d 1018 (Ala. 1983).
After thoroughly reviewing Dr. Cohen's testimony, we determine that it did not provide evidence as to whether the hospital had failed to "use that degree of care, skill, and diligence used by hospitals generally in the community." In this regard, Dr. Cohen repeatedly testified that the "safest" way for a health care provider to prepare a patient for an MRI test is to remove the patient's street clothes. He testified variously to this effect: "My personal opinion is [that] the safest thing for all patients undergoing MRI testing [is that they] should be placed in a hospital gown and not be allowed to get in [an MRI] machine with street clothes." He repeatedly stated that his testimony reflected his individual opinion, and he conceded that health care providers could have opposing opinions as to "the best course of action" in a given situation and still "be within the standard of care."
We observe that this testimony suggests the problem inherent in testimony as to the "safest" method of patient preparation. An opinion as to the "safest" method of any medical procedure may or may not be the same as an opinion as to what is required by "reasonable care, skill and diligence." To testify only to the "safest" or best way to dress a patient for an MRI is to beg the question of what is "reasonable care, skill, and diligence." Also, by limiting his testimony to the statement of a "personal opinion," Dr. Cohen failed to address acommunity standard (of what is reasonable "care, skill and diligence"). See McMickens v. Callahan, 533 So.2d 579
(Ala. 1988).
However, Henson argues that even if Dr. Cohen's testimony did not qualify as evidence of what is or what is not proper procedure, such evidence, she says, was supplied by hospital employees Killam and Toland, in the form of their testimony as to hospital policy. Specifically, Killam and Toland testified that there is a risk of patient burning if metallic objects are in contact with a patient's body during an MRI test and that it is the hospital's policy to remove metal objects from a patient's person before an MRI test.
We agree with Henson that in establishing the appropriate standard of care, "[t]here is no requirement that the plaintiff produce an independent expert where the testimony of the defendant . . . establishes the standard. . . ." Timmerman v.Fitts, 514 So.2d 907, 913 (Ala. 1987). However, the testimony of Killam and Toland is insufficient in the same way Dr. Cohen's is. It fails to address a community standard. Neither Killam's testimony nor Toland's testimony could reasonably be construed as showing a community standard; therefore, their testimony would *Page 564 
not preclude the entry of a summary judgment as to the claim in issue.
Based on the foregoing, we reverse the judgment of the trial court as to counts one and two of Henson's complaint, and we remand as to those claims. The judgment is affirmed as to count three.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and SHORES, HOUSTON and INGRAM, JJ., concur.
[1] Neither Henson or the hospital asserts any malfunction of the MRI equipment.
[2] We do not examine count four of Henson's complaint, which is an apparent repetition of other counts in that it states, without elaboration, that "the defendant breached the standard of care required of the defendant."
[3] Our discussion as to count three of Henson's complaint is not to suggest, however, that expert medical evidence would be necessary as to counts one and two of the complaint. As we have stated, the judgment is properly reversed as to those counts because those counts were not before the trial court for adjudication on the hospital's motion for a summary judgment. We do not address here what evidence would suffice to preclude a summary judgment as to those claims.
[4] We emphasize that the trial court's granting of the motion to strike was an affirmation of the objection raised in the hospital's motion to strike and in its accompanying argument, specifically, that Dr. Cohen was not qualified to testify as to matters of patient preparation, i.e., matters involved in count three of the complaint. Because the trial court's order has, therefore, a limited effect, we do not address whether such a ruling as to Dr. Cohen's testimony regarding other matters would be proper.