Susan Hawkins sued Dr. Richard Carroll, along with Gayle Skinner and Margie Jones, who worked in Dr. Carroll's office, alleging, among other things, that Dr. Carroll had breached the standard of care owed to her while she was under his care and that, as a proximate result, she had incurred medical expenses, experienced pain and suffering, and suffered mental anguish and emotional distress. Dr. Carroll moved to dismiss the action; the trial court elected to treat the motion as a motion for a more definite statement. In response, Hawkins submitted the following:
 "On or about June 24, 1992, Dr. Richard Carroll performed an open corrective septorhinoplasty on Susan Hawkins. On or about June 30, 1992, Susan Hawkins returned to Dr. Carroll's office to have the stitches and splints removed. On several follow-up visits, Susan Hawkins complained of severe irritation in areas where incisions had been made. On each occasion, she was told by Dr. Carroll that the stitches remaining in her nose were dissolvable and would dissolve.
 "Dr. Richard Carroll negligently failed to remove non-dissolvable stitches, which were causing severe irritation. One suture had protruded through the skin causing severe chronic inflammation."
Dr. Carroll then moved for a summary judgment. On May 29, 1995, the trial court granted the motion and entered a judgment in favor of Dr. Carroll; Hawkins appeals. This case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala. Code 1975.
On June 24, 1992, Dr. Carroll performed on Hawkins extensive nasal septal surgery to correct breathing problems and also a cosmetic procedure to make the tip of her nose smaller. He used both dissolvable and permanent sutures. At her first post-operative visit she had no complaints, other than normal swelling; a few days later, she telephoned Dr. Carroll to complain of a "dry and hard" nose, and he prescribed a nasal spray. During the next few weeks, a bump appeared inside Hawkins's nose, which at times would swell and be visible on the outside of her nose; at times there was a foul odor and a discharge from that bump. Hawkins stated that she was uncertain whether these conditions were present during her routine postoperative visits.
At her last office visit in December 1992, Hawkins was not satisfied with the physical appearance of her nose. Dr. Carroll recommended revisionary surgery, but Hawkins decided to consult another physician. On March 19, 1993, Dr. Daniel E. Rousso performed revisional nasal surgery.
In its order, the trial court made findings of undisputed material facts, including:
 "Other than two telephone calls concerning dryness of her nose and filling a prescription, she had no other contact with [Dr. Carroll's] office and made no requests for *Page 340 
appointments to have [Dr. Carroll] examine her for any swelling or infectious conditions.
". . . .
 "Revisional nasal surgery was performed by Dr. Rousso on March 19, 1993. During the operation he removed some sutures from the earlier surgery and stated that 'one of the sutures had apparently eroded through the skin and was causing a small degree of inflammation' and that this situation was not uncommon for a shield graft during the healing process. No evidence was presented that Dr. Rousso ever treated [Hawkins] or prescribed medication for an infection or inflammation of the nose. Since this surgery [Hawkins] has not experienced any problems outside the normal healing process."
A summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Leonard v. Providence Hospital,590 So.2d 906 (Ala. 1991); Rule 56, Ala.R.Civ.P. "In determining whether a summary judgment was properly entered, the reviewing court must view the evidence in a light most favorable to the nonmovant." Leonard, supra, at 907. When the movant makes a prima facie showing that no genuine issue of material fact exists, the burden shifts to the nonmovant to present "substantial evidence" to support his position. Id. When the defendant offers expert testimony that makes a prima facie showing of a lack of negligence, the defendant is entitled to a summary judgment, unless the plaintiff counters the defendant's evidence with expert testimony in support of his position.Pettigrew v. Harris, 631 So.2d 839 (Ala. 1993). In a medical malpractice case, such as here, Rule 56 must be read in conjunction with the "substantial evidence" rule found at §6-5-548(a) of the Alabama Medical Liability Act. Id.
Section 6-5-542(5) of the Act defines "substantial evidence" as follows: "Substantial evidence is that character of admissible evidence which would convince an unprejudiced thinking mind of the truth of the fact to which the evidence is directed."
In order to recover in a medical malpractice case, a plaintiff must prove by expert testimony that the physician breached the standard of care and by the breach proximately caused the plaintiff's injury. University of Alabama HealthServices Foundation v. Bush, 638 So.2d 794 (Ala. 1994). "To establish a physician's negligence, the plaintiff ordinarily must proffer expert medical testimony as to what is or is not the proper practice, treatment, or procedure." Complete FamilyCare v. Sprinkle, 638 So.2d 774, 777 (Ala. 1994). We note that the supreme court has recognized four situations where expert testimony is not required to prove the breach of the applicable standard of care; this case, however, does not involve one of those exceptions. See, Jones v. Bradford, 623 So.2d 1112
(Ala. 1993). The plaintiff's burden of proof regarding the applicable standard of care is found at § 6-5-548(a), which provides:
 "(a) In any action for injury or damages or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care the plaintiff shall have the burden of proving by substantial evidence that the health care provider failed to exercise such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice, ordinarily have and exercise in a like case."
"This section has been read as requiring that the 'community' standard of due care, see § 6-5-484(a), be established by expert medical testimony." Leonard, supra, at 908. "Community" has been interpreted to mean the national medical community.Sprinkle, supra.
In support of his motion for summary judgment, Dr. Carroll submitted his affidavit, a narrative summary of the undisputed material facts, and his brief. The trial court noted that Hawkins did not submit independent expert testimony, but that she did submit Dr. Carroll's deposition testimony. That portion of testimony upon which Hawkins relied to establish the standard of care reads as follows:
 "Q. . . . If a patient develops infection like with stitches that you have just described a moment ago, if infection or inflammation sets in, what is required by the *Page 341 
standard of care for doctors practicing in your area of specialty? What is the minimum treatment that would be required? "A. First of all, it depends on the degree of infection. Now, if it is just a little stitch abscess where one of the stitches was trying to spit — spit out, just removing the little stitch and sometimes doing a culture and starting on a broad spectrum antibiotic, and take a look at the patient again the following day.
 "Now if it was a very severe infection then that is a different story. I would require bringing the patient into the hospital and starting on some antibiotics. And if there was a stitch abscess there, remove that. But she didn't get this. She didn't have that."
Hawkins contends that Dr. Carroll's deposition testimony was sufficient to establish the applicable standard of care and that she was entitled to rely upon his testimony in establishing the standard of care. We note that a plaintiff is not required to produce an independent expert where the defendant's testimony establishes the appropriate standard of care. Henson v. Mobile Infirmary Association, 646 So.2d 559
(Ala. 1994); Timmerman v. Fitts, 514 So.2d 907 (Ala. 1987). However, we find that that portion of testimony upon which Hawkins relied was insufficient to establish the standard of care, because it failed to address a community standard. Nothing in the question propounded to Dr. Carroll, and nothing in his response, can be construed as establishing a community standard of care. See, Henson, supra.
We further conclude that Hawkins failed to present evidence creating a genuine issue of material fact as to the issue of proximate causation. "To prove causation in a medical malpractice case, the plaintiff must prove, through expertmedical testimony, that the alleged negligence probably caused, rather than only possibly caused, the plaintiff's injury."Bush, supra, 638 So.2d at 802 (emphasis added). Hawkins argues in brief that proximate causation was established by her affidavit, in which she stated that after Dr. Rousso had performed the second surgical procedure her infection began to clear up and that she had no more problems with inflammation. She concludes that "[t]he reasonable inference to be drawn is that the suture which had eroded through her skin was the source of the inflammation and, therefore, the cause of her physical pain and discomfort." Hawkins cannot rely upon her own testimony to prove proximate cause; rather, she was required to present expert medical testimony as to proximate cause, and she failed to do so.
AFFIRMED.
ROBERTSON, P.J., and CRAWLEY, J., concur.