MONROE, Judge.
Minnie White sued Dr. R.M. Jones, a chiropractor, alleging that he had negligently treated her knee. The case proceeded to trial. After White had completed her casein-chief, Jones moved for a directed verdict. After hearing the arguments of counsel, the trial court entered a directed verdict in favor of Jones, saying that White had not presented substantial evidence that Jones had committed malpractice. White appealed to the Alabama Supreme Court, which deflected the case to this court pursuant to § 12-2-7(6), Ala. Code 1975.
An appellate court reviews a directed verdict motion by the same standard the trial court uses in determining whether to grant or to deny the motion. “ ‘[W]hen reviewing the trial court’s ruling on the motion [for a directed verdict], we determine whether there was sufficient evidence to produce a conflict warranting jury consideration. And, like the trial court, we must view any evidence most favorably to the nonmovant.’ ” Triple J Cattle, Inc. v. Chambers, 621 So.2d 1221, 1224 (Ala.1993), quoting Ogle v. Long, 551 So.2d 914, 915 (Ala.1989); Bussey v. John Deere Co., 531 So.2d 860, 863 (Ala.1988). A directed verdict is proper when the nonmovant, in this case White, has failed to present substantial evidence of one or more elements of her claim. Mueller Co. v. Trambeam Corp., 693 So.2d 1380 (Ala.Civ.App.1997). “Substantial evidence” is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
White testified that she first saw Dr. Jones on May 5, 1992, because of pain she had in her right shoulder and hip. She went in for follow-up visits on May 8 and May 13. White said that on the May 13 visit, as she got out of her car and stepped up onto the curb to go into Dr. Jones’s office, she “caught a catch” in her knee. White said that she told Dr. Jones about the “catch” and that he examined her knee. She said that as he examined her knee, he “twisted” it, “just did one little twist.”
White said that the next morning she could not put any weight on her knee. She went to her physician, who referred her to an ortho-paedic surgeon, Dr. Warner Pinchback. She did not tell Dr. Pinchback that Dr. Jones had twisted her knee. Dr. Pinchback recommended physical therapy, but White’s knee failed to improve and she eventually required arthroscopic surgery.
Dr. Jones testified that he did not treat White’s knee at all. His office notes show that on the May 8 visit, White complained of a catch in her left leg. In his notes of May 13, there is no mention of any problem associated with her knee. Dr. Jones said that if White had complained of knee pain, he would have checked the knee’s range of motion and would have checked for tenderness or soreness. He said a range-of-motion test would not require twisting.
White’s attorney asked Dr. Jones whether, if White’s version of the events was true, the treatment White alleged Dr. Jones gave would have constituted malpractice. Dr. Jones said that it would, but that he disagreed with White’s version of the events.
Dr. Pinchbaek’s deposition also was admitted into evidence. He testified that he first saw White on May 22,1992. At that time, he said, she told him she had no history of trauma to the knee, but that her knee had gotten persistently worse. She told Dr. Pinchback that her knee had been bothering her for about a month. Dr. Pinchback eventually determined that White had a partial tear in the lateral meniscus of her left knee. He described the meniscus as a disc-shaped structure that acts as a shock absorber for the knee. He said such tears can be the result of age, persistent wear, or trauma such as “a forceful twisting type motion of the knee.” Dr. Pinchback said that tears in the meniscus can result from pivoting, such as would occur when one abruptly changes directions while walking. He noted that White also had arthritis in her knee and that she showed a softness of the “gristle” in her *415 knee, a condition that comes with age, he said.
No other witnesses testified. Although depositions had been taken from White’s expert witness and from Dr. Jones’s expert witness, White did not attempt to have either of those depositions admitted into evidence.
“In order to recover in a medical malpractice case, a plaintiff must prove by expert testimony that the physician breached the standard of care and by the breach proximately caused the plaintiffs injury.” Hawkins v. Carroll, 676 So.2d 338, 340 (Ala.Civ.App.1996); University of Alabama Health Services v. Bush, 638 So.2d 794, 798-99 (Ala.1994). A “community” standard of care must be established by expert medical testimony. Hawkins, supra. “Community” has been held to mean the national medical community. Id.
White contends that Dr. Jones’s testimony that, if White’s version of the events was true then his action would have been malpractice, constitutes expert medical testimony that proves a community standard of care and a breach of that duty. We disagree. Nothing in that testimony establishes a community standard, and there is no evidence that Dr. Jones breached a community standard of care.
Dr. Jones did testify as to how he would have examined White’s knee if she had complained to him about her knee. However, testimony as to how Dr. Jones would have handled the examination is insufficient to establish a community standard. See, e.g., Hawkins, supra, at 341.
Even if we were to determine that Dr. Jones’s testimony established a community standard and that his treatment of White constituted a breach of that standard, there is no evidence that that treatment was the proximate cause of White’s injury. “ ‘To prove causation in a medical malpractice case, the plaintiff must prove, through expert medical testimony, that the alleged negligence probably caused, rather than only possibly caused, the plaintiffs injury.’ ” Id. (quoting Bush, supra, 638 So.2d at 802). Even if White’s version of what happened is true, there is no evidence that Dr. Jones’s alleged treatment of White’s knee probably caused her injury. Dr. Pinchback testified as to several possible causes of tears in the meniscus; he gave no testimony as to the probable cause of her injury. We note that on May 22, just over a week from the day she said Dr. Jones injured her knee, White told Dr. Pinchback that her knee had been hurting her for about a month. She also testified that she hurt her knee stepping onto the curb at Dr. Jones’s office, and that is why she said he treated her knee in the first place. After reviewing the record, including the deposition of Dr. Pinchback, we agree with Dr. Jones that there is no evidence to suggest that his alleged treatment of White’s knee probably caused her injury.
Because White failed to present substantial evidence of the elements required for her to prevail in her case, the trial court properly directed a verdict in favor of Dr. Jones.
In her brief on appeal, White argues that because Dr. Jones is a chiropractor, the Alabama Medical Liability Act does not apply. Therefore, she says, this case should not be treated as a medical malpractice case, but as a simple negligence case. This case was tried as a medical malpractice case, and White never raised this argument before the trial court. The law is well settled that this court will not consider issues raised for the first time on appeal. Andrews v. Merritt Oil Co., 612 So.2d 409 (Ala.1992); Owens v. National Bank of Commerce, 608 So.2d 390 (Ala.1992).
The trial court properly directed a verdict in favor of Dr. Jones. The judgment based on that verdict is affirmed.
AFFIRMED.
YATES, CRAWLEY, and THOMPSON, JJ., concur.
ROBERTSON, P.J., concurs in result.