HOLMES, Retired Appellate Judge.
Vicki Dansby and her husband, Hubert Alan Dansby, appeal a summary judgment entered in favor of John Hagood, D.M.D., in a medical malpractice case. We affirm.
Our review of the record reveals the following: In 1994 Mrs. Dansby’s dentist referred her to Dr. Hagood, another local practitioner, for the repair of several crowns. On August 18,1994, Dr. Hagood determined that it would be necessary to replace two of the crowns. On August 29, 1994, Dr. Hagood removed the existing crowns, made impressions, and provided temporaries.
On September 16, 1994, Dr. Hagood provided Mrs. Dansby with permanent crowns. During the procedure, Mrs. Dansby felt a sensation that something was in her throat, but she could not distinguish what it was because her mouth was deadened. Mrs. Dansby immediately pushed Dr. Hagood’s hand away, telling him that she needed to “throw up.” Mrs. Dansby went to the restroom and then allowed Dr. Hagood to complete the procedure.
On September 26, 1994, ten days after the dental procedure, Mrs. Dansby fainted in her bathroom and awoke in a pool of blood. She called her daughter, who drove her to the emergency room at Lakeview Community Hospital in Eufaula, where she was treated by Dr. Elizabeth Robinson.
Dr. Robinson admitted Mrs. Dansby, who was 52 years of age, to the intensive care unit with a diagnosis of a lower gastrointestinal bleed (GI bleed). The following day, Dr. Robinson performed a bowel prep and a colo-noscopy on Mrs. Dansby. Dr. Robinson noted that the colonoscopy showed diverticulosis and internal hemorrhoids, but no active bleeding or clots. Dr. Robinson further noted that the GI bleed was probably secondary to diverticulosis, a condition of the colon whereby little pockets herniate from the wall of the colon. Dr. Robinson explained in her deposition that diverticulosis is extremely common in patients over age 50.
After her discharge, Mrs. Dansby experienced five additional episodes of passing clots from her rectum. On September 29, 1994, Dr. Robinson performed another colonosco-py, as well as an upper gastrointestinal endoscopy, on Mrs. Dansby. Dr. Robinson noted that there were multiple dark clots in the middle and lower portion of the colon and that the area was filled with clots. Dr. Robinson was unable, however, to establish the exact location of the bleeding and determined that Mrs. Dansby would probably need an arteriogram, which is an X-ray of an artery after the injection of dye into the artery. This test allows the doctor to actually look at the vessels in the colon to see an active bleed. At that point, Dr. Robinson transferred Mrs. Dansby to Flowers Hospital for further treatment by Dr. Doss Cleveland.
After being admitted to Flowers, however, Mrs. Dansby had no further bleeding. Dr. Cleveland observed Mrs. Dansby for several days and then discharged her, noting that an arteriogram would serve no useful purpose since she had not experienced any bleeding while under his care.
After Mrs. Dansby returned home, she cleaned the blood-stained rug in her bathroom. While soaking the rug in a tub of vinegar and water, something stuck Mrs. Dansby’s hand; she reached down and retrieved what later proved to be a number four latch-type drill bur. Mrs. Dansby took the bur to Dr. Robinson’s office. According to Mrs. Dansby, Dr. Robinson stated that the bur was the “culprit” and that Mrs. Dansby needed to contact an attorney. Dr. Robinson strongly denies making such statements.
*841 On August 26,1996, Mrs. Dansby sued Dr. Hagood under the Alabama Medical Liability Act of 1987, which is codified at Ala.Code 1975, §§ 6-5-540 through -552. In her complaint, Mrs. Dansby alleged that on September 16, 1994, Dr. Hagood breached the standard of care because, she said, he negligently and/or wantonly permitted her to ingest a drill bur, and he failed to inform her of the incident. As a result, Mrs. Dansby claimed that she suffered rectal bleeding; incurred substantial medical expenses; and endured substantial pain, suffering, and mental anguish. Her husband claimed damages for loss of consortium.
On January 30, 1998, Dr. Hagood filed a motion for a summary judgment, pursuant to Rule 56(e), Ala. R. Civ. P. On February 24, 1998, the trial court granted Dr. Hagood’s motion, finding that Mrs. Dansby had failed to present substantial evidence that Dr. Ha-good’s alleged negligence had probably caused Mrs. Dansby’s injury.
The Dansbys appeal. This case is before this court pursuant to Ala.Code 1975, § 12-2-7(6).
Initially, we note that in Hawkins v. Carroll, 676 So.2d 338, 340 (Ala.Civ.App.1996), this court set forth the following law regarding summary judgments in medical malpractice cases:
“A summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Leonard v. Providence Hospital, 590 So.2d 906 (Ala.1991); Rule 56, Ala. R. Civ. P. ‘In determining whether a summary judgment was properly entered, the reviewing court must view the evidence in a light most favorable to the nonmovant.’ Leonard, supra, at 907. When the movant makes a prima facie showing that no genuine issue of material fact exists, the burden shifts to the nonmovant to present ‘substantial evidence’ to support his position. Id. When the defendant offers expert testimony that makes a prima facie showing of a lack of negligence, the defendant is entitled to a summary judgment, unless the plaintiff counters the defendant’s evidence with expert testimony in support of his position. Pettigrew v. Harris, 631 So.2d 839 (Ala.1993). In a medical malpractice case, such as here, Rule 56 must be read in conjunction with the ‘substantial evidence’ rule found at § 6-5-548(a) of the Alabama Medical Liability Act. Id. Section 6-5-542(5) of the Act defines ‘substantial evidence’ as follows: ‘Substantial evidence is that character of admissible evidence which would convince an unprejudiced thinking mind of the truth of the fact to which the evidence is directed.’
“In order to recover in a medical malpractice case, a plaintiff must prove by expert testimony that the physician breached the standard of care and by the breach proximately caused the plaintiffs injury. University of Alabama Health Services Foundation v. Bush, 638 So.2d 794 (Ala.1994). ‘To establish a physician’s negligence, the plaintiff ordinarily must proffer expert medical testimony as to what is or is not the proper practice, treatment, or procedure.’ Complete Family Care v. Sprinkle, 638 So.2d 774, 777 (Ala.1994).... The plaintiffs burden of proof regarding the applicable standard of care is found at § 6-5-548(a), which provides:
“ ‘(a) In any action for injury or damages or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care the plaintiff shall have the burden of proving by substantial evidence that the health care provider failed to exercise such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice, ordinarily have and exercise in a like case.’
“ ‘This section has been read as requiring that the “community” standard of due care, see § 6-5-484(a), be established by expert medical testimony.’ Leonard, supra, at 908. ‘Community’ has been interpreted to mean the national medical community. Sprinkle, supra.”
In support of his motion for a summary judgment, Dr. Hagood presented sufficient evidence, through the discovery materials, that (1) on the day of the alleged incident, he never used a rotary instrument *842 in Mrs. Dansby’s mouth, and Mrs. Dansby never complained of nausea; (2) on no occasion did he use a number four latch-type drill bur in Mrs. Dansby’s mouth; and (3) the drill bur produced by Mrs. Dansby did not come from his office because, he said, his burs do not contain engraved rings around the shaft.
After reviewing all the evidence, we conclude that Dr. Hagood presented a prima facie showing that he did not breach the applicable standard of care in this ease. Hence, the burden shifted to Mrs. Dansby to present “expert testimony that [Dr. Hagood] breached the standard of care and by the breach proximately caused [Mrs. Dansby’s] injury.” Hawkins, 676 So.2d at 340.
Mrs. Dansby, however, did not present independent expert testimony to establish the applicable standard of care in this case. Instead, she relied on the following testimony elicited from Dr. Hagood:
“Q.... If a dental practitioner in the State of Alabama drops a dental bur in a patient’s mouth, and that patient swallows that dental bur, is that, in your professional opinion, a breach of the standard of care owed to that patient by that dentist?
[[Image here]]
“A. To that point [it] is not a breach.
[[Image here]]
“Q. Let’s go a little bit further with it, then, and let’s say that the patient is not made aware that this event has occurred. Does that, then, become a breach of the standard of care?
“A. I think it would. You should inform the patient.”
Mrs. Dansby contends that Dr. Hagood’s deposition testimony was adequate to establish the applicable standard of care. We agree. Our supreme court has noted that “[t]here is no requirement that the plaintiff produce an independent expert where the testimony of the defendant, as here, establishes the standard required of him by his profession.” Timmerman v. Fitts, 514 So.2d 907, 913 (Ala.1987). Furthermore, Mrs. Dansby offered other independent evidence to rebut Dr. Hagood’s properly supported summary judgment motion.
Hence, when viewing the evidence in a light most favorable to Mrs. Dansby, we conclude that she presented substantial evidence regarding Dr. Hagood’s alleged negligence. However, this showing of alleged negligence is not enough to withstand a summary judgment absent a showing of proximate cause. See Brooks v. Goldhammer, 608 So.2d 394 (Ala.1992) (holding that even though physician was negligent, physician was not liable absent a showing of proximate causation).
In order “[t]o prove causation in a medical malpractice case, the plaintiff must prove, through expert medical testimony, that the alleged negligence probably caused, rather than only possibly caused, the plaintiffs injury.” University of Alabama Health Services Foundation v. Bush, 638 So.2d 794, 802 (Ala.1994).
Regarding causation, Mrs. Dansby relied on the deposition testimony of Dr. Robinson, her treating physician, who testified that it was possible that the dental bur could have caused Mrs. Dansby’s bleeding. Indeed, while Dr. Robinson did testify that it was possible that the dental bur could have caused the bleeding, she, nevertheless, testified that is was unlikely that it did. Mrs. Dansby also contends that, because Dr. Robinson cannot state with any certainty what caused Mrs. Dansby’s injury, this court must rely on the circumstantial evidence surrounding the facts of the case.
As noted previously, the plaintiff in a medical malpractice case must utilize medical expert testimony to establish causation, and the expert must testify that the alleged negligence “probably” rather than “possibly” caused the plaintiffs injury. Bush, supra.
Furthermore, our supreme court, elaborating on the issue of proximate causation in a medical malpractice case, stated the following:
“The proof must go further than merely showfing] that an injury could have occurred in an alleged way—it must warrant the reasonable inference and conclusion that it did so occur as alleged—and the inference merely that it could so occur *843 does not warrant the conclusion that it did so occur, where from the same proof the injury can with equal probability be attributed to some other cause.”
McKinnon v. Polk, 219 Ala. 167, 168, 121 So. 539, 540 (1929).
In essence, Dr. Robinson diagnosed Mrs. Dansby as having a GI bleed, but was unable to establish the cause of the bleeding. Dr. Robinson provided the following answers in her deposition:
“Q.... Can you state, with any degree of medical certainty, what caused Mrs. Dansby’s bleeding and episodes?
“A. No, I cannot.
“Q. Did you find any evidence, from your testing and examination, that indicated a drill bit had caused Mrs. Dansby’s problems?
“A. No.
“Q. Did you find any evidence, from your testing and examination, to indicate that a laceration or puncture had caused Mrs. Dansby’s problems?
“A. No.
“Q. Would it be fair to say that, to try and say what caused Mrs. Dansby’s bleeding and episodes would be mere speculation on your part at this point in time?
“A. That’s correct.
[[Image here]]
“Q. Would it be fair to say that the drill bit that you’ve seen today is an unlikely cause of the problem that she had, that you treated her for?
“A. Yes. That would be fair to say.
[[Image here]]
“Q. Is it also fair to say that there is a possible explanation for the bleeding that has nothing to do with a puncture or laceration of the intestine?
“A. That’s correct.
[[Image here]]
Q. And you have indicated, I believe, it is possible for an individual to almost spontaneously have a GI bleed, and it clear up, and it never happen again?
“A. That’s right.
“Q. And when that occurs, what do you call it? Is that the spastic colon event?
“A. No - there are causes of GI bleeds. And she had a lower GI bleed, as we talked about. And the three most common causes, number one, is hemorrhoids. That is the number one cause of a lower GI bleed. Number two is diverticulosis. And number three is called an AVM, which is an arteriovenous malformation. It’s usually in the right side of the colon, that’s like a varicose vein in the colon. It bleeds quite a bit. That’s what you do the arteri-ogram for. Now, Mrs. Dansby, I have already ruled out a hemorrhoidal bleed, because I didn’t see any large bleeding hemorrhoids. And I had seen some diver-ticuli. So, she could have had a diverticu-lar bleed. But I didn’t see it actively bleeding at the time. Whether or not she had an AVM, that’s always a possibility. And a diagnostic test for that wasn’t done.”
(Emphasis added.)
Clearly, the trial court was correct in determining that Mrs. Dansby failed to present substantial evidence that Dr. Hagood’s alleged negligence “probably,” rather than “possibly,” caused Mrs. Dansby’s injury. Bush, supra. Consequently, the judgment is due to be affirmed.
The foregoing opinion was prepared by Retired Appellate Judge Richard L. Holmes while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala.Code 1975.
AFFIRMED.
ROBERTSON, P.J., and YATES, CRAWLEY, and THOMPSON, JJ., concur.
MONROE, J., concurs in the result.