THOMPSON, Judge,
dissenting.
“In a medical malpractice case, ... Rule 56 must be read in conjunction with the 'substantial evidence rule’ set forth at § 6-5-548(a) of the Alabama Liability Act.” Hawkins v. Carroll, 676 So.2d 338, 340 (Ala.Civ.App.1996); see also, Dansby v. Hagood, 719 So.2d 839, 841 (Ala.Civ.App.1998). Section 6-5-542(5), Ala.Code 1975, defines “substantial evidence”:
“Substantial evidence is that character of admissible evidence which would convince an unprejudiced thinking mind of the truth of the fact to which the evidence is directed.”
Section 6-5-548(a) provides in part:
“[t]he plaintiff shall have the burden of proving by substantial evidence that the health care provider failed to exercise such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice ordinarily have and exercise in a like case.”
This statute is quite specific about the quantum of proof required to establish a claim under the Alabama Medical Liability Act. Section 6-5-548(e) states in part that “[t]he purpose of this section is to establish a relative standard of care for health care providers.” I conclude, from a review of this statute, that the legislature intended that one opposing a motion for summary judgment be required to present, through the testimony of an expert, substantial evi *513 dence indicating that the defendant healthcare provider breached the applicable standard of care.
Further, even when viewing the evidence in the record in the light most favorable to the nonmovant, I conclude that Dr. Harkness’s affidavit does not set forth the standard of care to be applied in the circumstances of this case. Dr. Harkness’s affidavit stated:
“4. Based on my review of the hospital and office records provided to me in this case, there is an absence of documentation of either mentioning or discussing any specific risks or complications most commonly associated with the performance of the specifically intended surgical procedure, namely, an elective unilateral inguinal hernia repair employing prosthetic mesh grafting via a traditional regional incisional approach. The absence of any such documentation gives me cause to call into question whether informed consent was obtained in this case. It is my opinion that the documentation provided to me and presumably to the patient falls outside the standard of care exercised by a hospital credentialed practicing general surgeon in my community. The documentation does not support informed consent for the procedure in question.”
While Dr. Harkness questions the adequacy of the documentation in Hempfleng’s medical records, in my opinion he does not establish the standard of care required of a reasonably competent surgeon performing an elective surgical repair of a hernia. Although, in his affidavit Dr. Harkness appears to question whether Dr. Smith informed his patient of the possible risks and complications of the procedure, Dr. Harkness gives us no indication of the kind of preoperative disclosure that would be appropriate for a patient undergoing this kind of surgery.
The record on appeal contains a “Record of Consent,” dated March 8, 1996, the date the plaintiff underwent surgery; it was signed by the plaintiff and was witnessed by a third party. In that document, the following statement appears above the plaintiffs signature:
“The nature and purpose of the operation and/or procedure, possible alternative methods of treatment, the risks involved, and the possibility of complications have been explained to me.”
I would affirm the summary judgment because, in my opinion, the plaintiff has established no standard against which Dr. Smith’s conduct can be measured and, therefore, the plaintiff has failed to establish a genuine issue of material fact as to whether Dr. Smith breached the applicable standard of care.