The issue in this medical malpractice case is whether the defendant's summary judgment was proper on the basis that the plaintiff had not presented evidence of the standard of care. We reverse and remand. *Page 1279 
Daniel E. Rudolph was admitted to Huntsville Hospital after stabbing himself in the chest. He was evaluated by a psychiatrist, Dr. Trevor R. Lindsay, M.D., who discharged him several days later with instructions for outpatient treatment. Four days later, Rudolph committed suicide by shooting himself.
Daniel Rudolph's wife, Susan A. Rudolph, as the administratrix of Daniel Rudolph's estate, sued Dr. Lindsay individually and his professional corporation, Trevor R. Lindsay, M.D., P.C., alleging that Dr. Lindsay negligently assessed Daniel Rudolph and negligently discharged him without suicide precautions, and that Daniel Rudolph's death occurred as a proximate result of Dr. Lindsay's negligence. Dr. Lindsay answered and moved for a summary judgment. The trial court entered a summary judgment in Dr. Lindsay's favor, and Mrs. Rudolph appeals.
A summary judgment is proper upon a showing "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c)(3), Ala.R.Civ.P. As the moving party, Dr. Lindsay had the burden of proving that there was no genuine issue of material fact.
 " 'The burden is on one moving for summary judgment to demonstrate that no genuine issue of material fact is left for consideration by the jury. The burden does not shift to the opposing party to establish a genuine issue of material fact until the moving party has made a prima facie showing that there is no such issue of material fact. Woodham v. Nationwide Life Ins. Co., 349 So.2d 1110 (Ala. 1977); Shades Ridge Holding Co. v. Cobbs, Allen Hall Mortg. Co., 390 So.2d 601
(Ala. 1980); Fulton v. Advertiser Co., 388 So.2d 533
(Ala. 1980).' "
Berner v. Caldwell, 543 So.2d 686, 688 (Ala. 1989) (quotingSchoen v. Gulledge, 481 So.2d 1094 (Ala. 1985)).
In moving for a summary judgment, Dr. Lindsay primarily relied on his own affidavit, in which he recited his qualifications, his familiarity with the standard of care required of psychiatrists, and his recollection of the care he gave to Rudolph, and in which he then stated:
 "I continued to follow Mr. Rudolph through the time of his discharge from the hospital on December 6, 1988. Toward the end of the hospitalization, Mr. Rudolph became insistent that he be discharged from the hospital to go to his parents' home. I conferred with his father, Albert Rudolph, who stated that Daniel Rudolph would be welcome in his home and that he and his wife could provide supportive care for him. The patient adamantly denied any suicidal ideation, thoughts, etc. He was apologetic and sorrowful for having entertained thoughts and actions of harming himself in the past. It was my opinion that he could not be held in the hospital against his will, and since there was nothing medically to prevent him from discharge from the hospital, I consented to discharge. In doing so, and in the manner of discussing with him and his parents such discharge, I conformed to the standard of care, skill and diligence which is expected of a psychiatrist under the circumstances. Furthermore, the death of Daniel Rudolph is not a result of any failing on my part to conform to the required degree of care."
C.R. 17.
In response to Dr. Lindsay's motion for summary judgment, Susan Rudolph offered the affidavit of Dr. Harry Doyle, M.D., a psychiatrist practicing in Philadelphia, Pennsylvania. After reciting his qualifications and portions of Daniel Rudolph's medical history from records and other materials that he had reviewed, Dr. Doyle stated:
 "Mr. Rudolph was seen by Dr. Lindsay for outpatient treatment on September 21, 1988 and October 31, 1988. He was maintained on neuroleptic medication by Dr. Lindsay.
 "Daniel Rudolph was next admitted to Huntsville Hospital on November 28, 1988, with a self-inflicted stab wound to the chest. He received surgical care from Dr. Sheffey and psychiatric care from Dr. Lindsay during that hospitalization. He was on suicidal precautions throughout his hospital stay, but was not transferred to the psychiatric unit after he was medically *Page 1280 
stable. He was also noted to have signs of tardive dyskinesia, a significant, potentially irreversible side effect of neuroleptic medication, during that hospitalization. He was discharged by Dr. Lindsay on December 6, 1988 absent suicide precautions. The discharge diagnosis was listed at 295.93 (schizophrenic psychosis, unspecified, subchronic with acute exacerbation).
 "It is my professional opinion that Dr. Trevor Lindsay breached the minimum standard of care in his care and treatment of Daniel E. Rudolph by failing to assess the potential for suicide in light of the prior suicide attempt and his underlying psychosis. It is further my opinion that when a patient such as Daniel Rudolph has made a serious suicide attempt and then suddenly denies the significance of it and denies that he has any suicide thoughts, that is a bad prognostic sign and one which must be fully evaluated by the attending psychiatrist. It is further my opinion that Daniel Rudolph should not have been discharged absent any certified precautions on December 6, 1988 and should have been further reevaluated in light of his serious suicide attempt. It is further my professional opinion that the absence of proper evaluation and diagnosis by Dr. Trevor Lindsay in light of the prior suicide attempt and [his discharge] from the hospital absent suicide precautions [are] what led to the death of Daniel Rudolph on December 9, 1988."
C.R. 24.
The trial court's order reads, in pertinent part, as follows:
 "This action is before the court on defendant's motion for summary judgment. Upon consideration of such motion, the pleadings, the affidavits submitted in support of, and, opposition to the subject motion, and oral arguments of counsel, this Court is of the opinion that the motion is due to be granted. The affidavit of plaintiff's medical expert totally fails to address the appropriate standard of care to be applied in the circumstances of this case.
 " 'The failure of an expert to establish the standard of care results in a lack of proof essential to a medical malpractice plaintiff's case. . . . In order to establish the standard of care in this case, [plaintiff's expert witness] was required to enumerate the prevailing medical procedures in the national medical community that reasonably competent physicians would ordinarily utilize when acting in the same or similar circumstances. . . . If the standard of care is not established, there is no measure by which the defendant's conduct can be gauged.'
 "Pruitt v. Zeiger, 590 So.2d 236, 238 (Ala. 1991) (citations omitted)."
Pruitt v. Zeiger, 590 So.2d 236 (Ala. 1991), the case relied on by the trial court, was not a case involving a summary judgment; rather, in that case this Court reviewed the sufficiency of the deposition of the plaintiff's medical expert offered in support of the plaintiff's medical malpractice claim at trial. The trial court in Pruitt considered whether the plaintiff's medical evidence was sufficient to meet the plaintiff's burden of proof in order to establish his case at trial. When the trial court determined that the plaintiff's medical expert's deposition was insufficient to meet the plaintiff's burden, the plaintiff had nothing to support the case and declined to continue the trial. Because Pruitt was not a summary judgment case, there was no presumption, as there is in this case, requiring that the evidence be viewed most favorably to the nonmovant.
On the particular facts of Pruitt, the Court found that the testimony of the plaintiff's expert that there had been poor communication among the medical personnel involved in the case insufficient to constitute substantial evidence of a breach of the required standard of care. That is, the Court determined that there was nothing explicitly stated or to be reasonably inferred from the testimony that could serve as a reference point for determining what the defendant should have done, i.e., for determining the "standard of care." Within the context of the "substantial evidence" test, Ala. Code 1975, §12-21-12, the Court required that the plaintiff's expert witness "enumerate the prevailing medical procedures in the national medical community that reasonably competent physicians would *Page 1281 
ordinarily utilize when acting in the same or similar circumstances." Pruitt, 590 So.2d at 238.
The essence of Pruitt was that the plaintiff failed to present "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment [could] reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989). In Pruitt, the "fact sought to be proved" was a breach of the standard of care required of a similarly situated physician. That is, without some reference to the content of the defendant's communication, or the persons to whom that communication should have been directed, or what the communication should have been, there was no substantial evidence from which to infer a breach of the standard of care; proof of such a breach is required in order for a plaintiff to recover in an action under Ala. Code 1975, § 6-5-548.
Pruitt was unusual in that there was nothing in the testimony of the plaintiff's expert that explicitly or implicitly supplied substantial evidence of the standard of care. Absent some specific discussion of the nature of the "lack of communication" that the plaintiff alleged resulted in a failure of appropriate medical care, there was nothing to support an inference as to what the defendant did or failed to do that constituted malpractice. In most medical malpractice cases, the standard of care is sufficiently established by reference to particular acts of the defendant. Pruitt does not add a new element to the plaintiff's burden of proof under Ala. Code 1975, § 6-5-548; reference to an explicit failure to show a standard of care was warranted in Pruitt because of the particular deficiencies of the deposition relied on by plaintiff at trial to establish the requisite failure of appropriate medical care.
Further, Pruitt does not imply any change in the settled law of summary judgment analysis in medical malpractice cases. That analysis was stated in full at the outset of this opinion, and it remains consistent with summary judgment analysis in all other types of cases. See, e.g., Willard v. Perry,611 So.2d 358 (Ala. 1992); Brooks v. Goldhammer 608 So.2d 394 (Ala. 1992);Smith v. Medical Center East, 585 So.2d 1325 (Ala. 1991); Morrisv. Young, 585 So.2d 1374 (Ala. 1991); Parrish v.Russell, 569 So.2d 328 (Ala. 1990); Ex Parte Hatton,547 So.2d 450 (Ala. 1989); and Yarbrough v. Springhill Memorial Hospital,545 So.2d 32 (Ala. 1989). The analysis in Pruitt as to the standard of care would apply in regard to a summary judgment only where the movant's affidavit was so deficient that no standard of care could be inferred. For example, the simple assertion, "I did not breach the standard of care," would not shift the burden to the nonmovant, in light of Pruitt.
In the present case, the standard of care is already sufficiently established by the defendant's affidavit in support of his motion for summary judgment. Dr. Lindsay indicated that he discussed the pending release with the patient, considered the patient's treatments and representations as to stability, and checked and evaluated the likely environment of the patient after release. These particular acts supply substantial evidence as to the standard of care for a medical professional like Dr. Lindsay in the circumstances of this case. That is, reasonable people can infer that the inquiries and evaluations performed by Dr. Lindsay are what a treating psychiatrist should do in a similar situation, and that Dr. Lindsay would not disagree with that inference.
In effect, Dr. Lindsay defined a standard of care by the acts specified and indicated that by performing the acts he had provided the same care that other similarly situated health care providers would have provided. This is sufficient to meet the requirement in Pruitt that facts be set out sufficiently to indicate what the health care provider should have done in order that the factfinder might determine whether the health care provider breached the standard of care. Hence, Dr. Lindsay contends that he has not committed malpractice and is entitled to a judgment as a matter of law. Under the usual summary judgment analysis, Dr. Lindsay's affidavit is sufficient to shift to the plaintiff the burden of rebuttal.
The next question we must consider, making every reasonable inference in favor of the nonmovant, here the plaintiff, is whether Dr. *Page 1282 
Doyle's affidavit was sufficient to create a genuine issue of material fact and thereby rebut the defendant's prima facie showing. Dr. Doyle's affidavit disagrees with Dr. Lindsay's assertions as to the proper extent of evaluation before a patient's release and disputes the correctness of Dr. Lindsay's diagnosis. As in Dr. Lindsay's affidavit, the standard of care is implicit in Dr. Doyle's assertion of what Dr. Lindsay should have done. Although Dr. Doyle did not specifically state that he was familiar with the standard of care, his recitation of qualifications supports an inference that he is familiar with the appropriate standard. Dr. Doyle stated in his affidavit that Dr. Lindsay breached the standard of care by "failing to assess the potential for suicide in light of the prior suicide attempt and his underlying psychosis." Dr. Doyle's affidavit also indicates that Dr. Lindsay breached the standard by failing to more fully evaluate the decedent in light of his prior suicide attempt and in discharging the decedent without instituting suicide precautions. The standard of care, the care that Dr. Lindsay should have provided, is sufficiently inferable from the substance of Dr. Doyle's affidavit.
There is, therefore, a disagreement between these two medical experts, Dr. Lindsay and Dr. Doyle, as to the extent and quality of care that should have been delivered. This is exactly the material issue of fact that is reserved for the trier of fact. The summary judgment was therefore inappropriate in this case.
Accordingly, the summary judgment is reversed, and the cause remanded for further proceedings pursuant to this opinion.
REVERSED AND REMANDED.
ADAMS, HOUSTON, KENNEDY and INGRAM, JJ., concur.
ALMON and SHORES, JJ., concur specially.
MADDOX and STEAGALL, JJ., dissent.