David Scoggin appeals a summary judgment in favor of Listerhill Employees Credit Union on his claims alleging fraud, misrepresentation, and breach of contract. His claims were based on his purchase of a used motor vehicle from the Credit Union. Specifically, Scoggin contends that when he purchased the vehicle, the odometer read 18,334 miles but that, in fact, the vehicle had 155,575 miles on it. He alleges that had he known the true mileage of the vehicle, he would not have paid for it as much as he did pay. He later traded it in on another vehicle before learning of the mileage discrepancy. We affirm.
In 1990, Scoggin bid $5000 on a used 1988 Dodge Dynasty automobile that had been repossessed by the Credit Union. In his deposition, Scoggin claimed that he spoke with a representative of the Credit Union and that that person told him that the vehicle had been burned and that, in order to get rid of the smoke smell, the Credit Union had replaced the interior of the car. Scoggin did not test drive the automobile before buying it. His deposition testimony described the incidents leading up to the purchase, in pertinent part, as follows:
 "Q. So you came into the credit union and you spoke with this gentleman. I believe you described him as being in his 50's. And he took you out and — into the lot somewhere and showed you all the cars that they had out there that were for sale.
". . . .
 "Q. And so he walked on out to where the car was, okay. Can you tell me what you asked him, if anything, about the car?
 "A. I asked him about what kind of shape the car was in. He said it was in good shape. It had been sitting on the lot for a year because they had so much money tied up in it and no one would give [that much money for] it.
". . . .
 "Q. And he told you that car was in good shape. Are those your words or is —
"A. He told me the car was in good shape.
 "Q. That's what you remember him saying? (Deponent nodded affirmatively.)
 "Q. Do you remember anything else he told you about the car?
 "A. He told me that the car had — the people that they had [repossessed] it from tried to burn it. And there was a hole in the seat about — half a dollar. And he said it smoked it up real bad, because they had shut the door *Page 378 
and it was airtight and they throwed undoubtedly — a cigarette is what he said.
 "Q. So he told you the car had been burned and you —
 "A. No. He said it was a hole about the size of a half dollar in the seat, and it had smoked it up. . . ."
C.R. 44-45. He further described the bidding process and the vehicle:
 "Q. Before submitting your sealed bid, which I recall you saying was in your father's name since he was a member here —
"A. Uh-huh (yes).
 "Q. — did you have any other conversation with any person connected with the credit union about the car, its condition and its history?
"A. No.
". . . .
 "Q. So let me — just go back over real quickly getting to this point where you submitted the bid. You had the one conversation with the gentleman that you've described as being in his 50's that occurred out in the lot where the car was. And you've related to us everything that was said by him about the car on that occasion?
"A. To the best of my knowledge, yeah.
 "Q. Other than discussing how a bid was submitted and whether or not your bid — other than discussing a bid was submitted, before submitting your bid, did you have any other conversation whatsoever with anyone at the credit union about the car or its condition?
"A. No.
". . . .
 "Q. All right. After you were told that your bid was the high bid, what did you do?
 "A. I came over then and talked with Leonard [Halcomb]. . . .
". . . .
 "Q. Did he tell you anything about the car whatsoever that you can recall?
 "A. We [apparently Scoggin and his mother] did ask him about it. He said as far as he knew that it was a good car and that was it."
C.R. 46-50. With regard to warranties on the car, he testified as follows:
 "Q. But now you realize when you bought the car, you were buying it 'as is,' correct?
"A. Yeah.
"Q. There were no warranties, correct?
 "A. You asked me if I was out any money. Yeah, I was out money and I shouldn't have been. I wouldn't have been if I'd known —
 "Q. But you knew you were buying the car 'as is' with no warranties; correct?
"A. Yes."
C.R. 65. Following this testimony, counsel for the Credit Union sought to obtain an overview of Scoggin's testimony:
 "Q. When you say he had to get the key out of there, this was some kind of a room where they kept the keys for all these cars?
 "A. No, it didn't look it. It was just in — this was in a desk drawer. He just got it out of a desk drawer.
 "Q. And from that point then, you went out into the lot with him?
"A. Uh-huh (yes).
 "Q. Okay. Was it at that point, you know — you know that you told me earlier about he related that there had been, you know, some kind of a fire and smoke damage to the car. Was that the occasion?
 "A. There had been a spot about the size — and he done with his hands about like this.
 "Q. But he was indicating that that spot had been caused by fire?
 "A. Yeah. From a cigarette that he said they had threw in there and they shut the door and it just smothered out before it burned completely down.
 "Q. And the interior of the car had been replaced because of the smoke? *Page 379 
"A. All the interior had been replaced.
 "Q. Okay. And it was on this first occasion you were told that; is that right?
 "A. Right. They had tried to clean it and it would not — they couldn't get the smell out."
C.R. 68-69.
After Scoggin purchased the car, he and his wife drove it until Scoggin traded it in toward the purchase of another vehicle. The trade-in allowance on the price of the second automobile was $6,600. Scoggin claims that it was only after he had traded the automobile that he discovered the odometer discrepancy. Although Scoggin alleges a breach of contract, the sales document he signed clearly states that the used vehicle was being sold "as is," and in his deposition testimony Scoggin admitted that he purchased the vehicle "as is." Thus, the trial court correctly entered the summary judgment as to the breach of contract claim.
The certificate of title, which Scoggin claims he did not read and did not receive a copy of, contained the following statement, printed in large letters:
 "THE ODOMETER READING IS NOT THE ACTUAL MILEAGE — WARNING — ODOMETER DISCREPANCY."
In addition, although Scoggin claims not to have read the statement relating to the odometer discrepancy, he signed that statement, too. He also signed the same odometer disclosure statement in another place to certify that he had received a copy of it.
In support of its motion for summary judgment, the Credit Union offered Scoggin's deposition testimony set out above, along with the supporting documents. That evidence made a prima facie showing that there was no genuine issue of material fact; the burden then shifted to Scoggin to present substantial evidence creating a genuine issue of material fact and indicating that the Credit Union was not entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P.; § 12-21-12, Ala. Code 1975; Rudolph v. Lindsay, 626 So.2d 1278, 1279
(Ala. 1993).
In opposition to the motion for summary judgment, Scoggin submitted an affidavit stating in pertinent part:
 "On August 28, 1990, I purchased a 1988 Dodge Dynasty VIN #1B3BU4636JD147876 from Listerhill Credit Union. I spoke with a representative of the Credit Union prior to my submitting a bid to purchase this vehicle from Listerhill Credit Union. In my conversation with the representative from Listerhill, I was advised that the vehicle had been repossessed and that the vehicle had had a burn mark the size of a half dollar on the seat. I understood that the interior had been refurbished. By that, I understood that repairs had been made to recover the seats to repair the damage resulting from the burn mark. I never was advised, nor did I ever understand, that the dash had been replaced or removed. Neither was I advised that the VIN plate had been removed or that the odometer had been replaced. I first learned of this after I traded the vehicle to Jim Bishop in January, 1992. The odometer on the vehicle stated 18,344 at the time I purchased the vehicle. I questioned the Listerhill Credit Union representative about this and he advised me that these were the actual miles on the vehicle. I did not note the discrepancy in what was put on the odometer statement that Listerhill had me sign which reflected that the mileage would have actually been 155,575 miles, not 55,575. I had no reason to doubt that what the representative at Listerhill had told me was not correct in that I would not have bought the vehicle had I known that the mileage was in excess of 100,000 miles."
C.R. 72-74. The court struck that affidavit. The Credit Union contends that the court properly struck Scoggin's affidavit, because, it says, that affidavit contradicted his deposition testimony given earlier. The conversation with the Credit Union representative, as related in the deposition, did not include the statement alleged in Scoggin's affidavit regarding the mileage reflected on the odometer. When specifically questioned during the deposition regarding other statements the Credit Union representative may have made *Page 380 
to Scoggin, Scoggin stated that there were none.
"When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." Van T. Junkins Associates, Inc. v. U.S. Industries, Inc., 736 F.2d 656, 657
(11th Cir. 1984); see Couch v. Woody Anderson Ford, Inc.,558 So.2d 888 (Ala. 1989). The trial court properly struck Scoggin's affidavit. We must conclude that Scoggin did not offer substantial evidence creating a genuine issue of material fact. The summary judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and ALMON, HOUSTON and KENNEDY, JJ., concur.