ROBERTSON, Presiding Judge.
Kenneth Dean Hempfleng appeals from a summary judgment entered by the Baldwin County Circuit Court on his medical-negligence claims against Dr. Charles B. Smith. We reverse and remand.
Hempfleng filed a complaint in the trial court on February 27, 1998, alleging that he had suffered an infection after undergoing a procedure performed by Dr. Smith, a board-certified surgeon, and that Dr. Smith had negligently failed to treat that infection with antibiotics in a timely manner and, as a result of that failure, caused one of Hempfleng’s testicles to atrophy. Dr. Smith moved for a summary judgment, supported in part by his own affidavit, wherein he affirmed that in his treatment of Hempfleng he had not deviated from the standard of care adhered to by other surgeons practicing in the same specialty under similar circumstances in the national medical community.
After Dr. Smith filed his summary-judgment motion, Hempfleng amended his complaint to allege that Dr. Smith had “failed to adequately and completely warn [him] of the possible complications, side effects, results and injury” that could arise from the surgical procedure that Hemp-fleng says gave rise to his infection and testicular atrophy, and that Dr. Smith’s alleged failure to obtain Hempfleng’s informed consent breached the applicable standard of care. Hempfleng also filed a response to Smith’s summary-judgment motion, asserting that genuine issues of material fact existed concerning whether Hempfleng had given informed consent. In support of his response, Hempfleng filed an affidavit signed by Dr. Steven 0. Harkness, a board-certified surgeon practicing in New Orleans, Louisiana. Dr. Harkness’s affidavit, in pertinent part, stated:
“2. I am familiar with the standard of care expected of a general surgeon with regard to informed consent.
“3. I have reviewed the medical records of Dr. Charles Smith concerning patient Kenneth Hempfleng, together with the hospital records [relating to Dr. Smith’s] hernia repair surgery on Mr. Hempfleng.
“4. Based on my review of the hospital and office records provided to me in this case, there is an absence of documentation of either mentioning or discussing any specific risks or complications most commonly associated with the performance of the specifically intended surgical procedure, namely, an elective unilateral inguinal hernia repair employing prosthetic mesh grafting via a traditional regional incisional approach. The absence of any such documentation gives me cause to call into question whether informed consent was obtained in this case. It is my opinion that the documentation provided to me and presumably to the patient falls outside the standard of care exercised by a hospital credentialed practicing general surgeon in my community. The documentation does not support informed consent for the procedure in question.”
Hempfleng also submitted his own affidavit, in which he stated that Dr. Smith did *508 not explain any risks, such as permanent testicular atrophy, associated with the hernia-repair surgery he was to undergo.
The trial court entered a summary judgment in favor of Dr. Smith on November 17, 1998. Also on November 17, 1998, Dr. Smith filed a motion to dismiss Hemp-fleng’s amended complaint; however, the trial court noted on the case action summary sheet that that motion was moot because of the summary judgment.
Hempfleng appealed to the Alabama Supreme Court. That court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala.Code 1975.
The sole issue presented on appeal is whether Dr. Harkness’s affidavit created a genuine issue of material fact with respect to whether Dr. Smith obtained Hemp-fleng’s informed consent to the hernia repair.
Our review of a summary judgment entered in a medical-negligence action is governed by the following settled principles of law:
“A summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. In determining whether a summary judgment was properly entered, the reviewing court must view the evidence in a light most favorable to the nonmovant. When the movant makes a prima facie showing that no genuine issue of material fact exists, the burden shifts to the nonmovant to present ‘substantial evidence’ to support his position. When the defendant offers expert testimony that makes a prima facie showing of a lack of negligence, the defendant is entitled to a summary judgment, unless the plaintiff counters the defendant’s evidence with expert testimony in support of his position. In a medical malpractice case, such as here, Rule 56 must be read in conjunction with the ‘substantial evidence’ rule found at § 6 — 5—548(a)[, Ala. Code 1975, a portion] of the Alabama Medical Liability Act. Section 6-5-542(5)[, Ala.Code 1975,] defines ‘substantial evidence’ as ... ‘that character of admissible evidence which would convince an unprejudiced thinking mind of the truth of the fact to which the evidence is directed.’
“... To establish a physician’s negligence, the plaintiff ordinarily must proffer expert medical testimony as to what is or is not the proper practice, treatment, or procedure.... The plaintiffs burden of proof regarding the applicable standard of care is found at § 6-5-548(a), which provides:
“ ‘(a) In any action for injury or damages or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care the plaintiff shall have the burden of proving by substantial evidence that the health care provider failed to exercise such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice, ordinarily have and exercise in a like case.’
This section has been read as requiring that the ‘community’ standard of due care, see § 6-5^I84(a), be established by expert medical testimony. ‘Community’ has been interpreted to mean the national medical community.”
Hawkins v. Carroll, 676 So.2d 338, 340 (Ala.Civ.App.1996) (citations and some internal quotation marks omitted). We further note the following additional pertinent principles of law governing allegations of failure to procure informed consent:
“In Johnson v. McMurray, 461 So.2d 775 (Ala.1984), this Court held that, in the medical malpractice context, those claims that involve allegations of lack of informed consent are essentially fraud cases. In that genre of fraud case, however, expert testimony is still necessary to establish adherence to or deviation from the proper standard of care. See Johnson v. McMurray, supra; Fain v. *509 Smith, 479 So.2d 1150 (Ala.1985). Nevertheless, lack of informed consent cases are different, somewhat, in type from negligent treatment cases: generally speaking, the act of treatment should not occur without the act of obtaining informed consent. If the patient is injured during treatment, his injury will be the result either of the physician’s acts during the treatment or of the physician’s failure to fully disclose prior to the treatment risks or consequences associated with the treatment. Cf. Fain v. Smith, supra."
Horton v. Shelby Med. Ctr., 562 So.2d 127, 130 (Ala.1989). With these tenets in mind, this court must consider whether the trial court properly entered the summary judgment in favor of Dr. Smith.
As we have previously noted, Dr. Smith’s summary-judgment motion was supported by his own affidavit, in which he stated that he did not breach the appropriate standard of care in treating Hemp-fleng. That affidavit constituted expert testimony that shifted the burden to Hempfleng to adduce “substantial evidence” indicating that Dr. Smith breached the standard of care. The question thus arises: Did Dr. Harkness’s affidavit satisfy that standard?
Dr. Harkness is a board-certified surgical specialist who is familiar with general surgical procedures, just as Dr. Smith is. Dr. Harkness is thus a “similarly situated health care provider” within the meaning of that term as it is used in § 6-5-548(e), Ala.Code 1975. However, Dr. Smith contends that Dr. Harkness’s affidavit does not constitute substantial evidence creating a genuine issue of material fact because, Dr. Smith says, (1) Dr. Harkness’s affidavit does not show what is and what is not proper medical procedure or “establish the standard from which the deviation occurred,” and (2) his affidavit refers to the standard of care in “my community,” which, Dr. Smith says, is New Orleans, Louisiana.
Dr. Smith’s second contention, that Dr. Harkness’s affidavit is incompetent because it refers to the standard of care in New Orleans, Louisiana, has no valid basis in modern medical-malpractice law. In Parrish v. Russell, 569 So.2d 328 (Ala.1990), the Alabama Supreme Court rejected a similar challenge to standard-of-care testimony from an out-of-state physician, concluding that “ ‘[distinctions in the degree of care and skill to be exercised by physicians ... based upon geography can no longer be justified in light of the presently existing state of transportation, communications, and medical education and training which results in a standardization of care within the medical profession.’ ” 569 So.2d at 331 (quoting Zills v. Brown, 382 So.2d 528, 532 (Ala.1980)). Just as “[t]he standard of care in Pensacola[, Florida,] would not be different from the standard of care in Foley, Alabama,” 569 So.2d at 331, the standard of care applicable to board-certified surgical specialists in New Orleans, Louisiana, is not different from that applicable in Mobile, Alabama, where Dr. Smith performed surgery upon Mr. Hempfleng. Thus, Dr. Smith’s second contention does not provide a basis for affirming the trial court’s judgment.
Dr. Smith’s first contention, that Dr. Harkness must “establish” the standard of care in his affidavit, is based upon Pruitt v. Zeiger, 590 So.2d 236 (Ala.1991). In Pruitt, the Alabama Supreme Court, in a medical-malpractice action, affirmed a judgment of dismissal that had been entered after the trial court had granted a motion to strike the deposition testimony of the plaintiffs’ expert witness; that deposition testimony had been the only expert evidence the plaintiffs had intended to present at trial. The Pruitt court quoted portions of the testimony contained in the stricken deposition transcript, which contained generalized criticisms of “breakdowns in communication” and of “some reduced care below the standards,” and concluded that the trial court had correctly excluded the expert’s testimony. In *510 reaching its conclusion, the Alabama Supreme Court reasoned:
“The failure of an expert to establish the standard of care results in a lack of proof essential to a medical malpractice plaintiffs case. In order to establish the standard of care in this case, [the plaintiffs’ expert witness] was required to enumerate the prevailing medical procedures in the national medical community that reasonably competent physicians would ordinarily utilize when acting in the same or similar circumstances. If the standard of care is not established, there is no measure by which the defendant’s conduct can be gauged. We find that the deposition testimony of [the plaintiffs’ expert witness] failed to establish the standard of care and, therefore, it was not possible for [that witness] to testify as to [the defendant’s] deviation from any such standard....
“Although [the plaintiffs’ expert witness] alluded to a ‘breakdown’ in communication throughout his testimony, he failed to explain the manner in which communication was deficient. It was incumbent upon [him] to explain how ‘physicians ... in the same general neighborhood, and in the same general line of practice,’ Ala.Code 1975, § 6-5-484(a), would communicate under the circumstances presented in this case. A blanket statement that communication was poor does not establish a standard of care. In order to establish a physician’s negligence, the plaintiff must offer expert medical testimony as to the proper practice, treatment, or procedure. [The plaintiffs’ expert witness] did not describe a procedure that rises to the level of a standard of care. He merely gave his opinion as to what [the defendant] should have done under the circumstances presented in this case.”
Pruitt, 590 So.2d at 238 (citations and some internal quotation marks omitted). To like effect is Henson v. Mobile Infirmary Ass’n, 646 So.2d 559 (Ala.1994), in which an expert witness expressed his own “personal opinion” concerning the “safest” way to perform a magnetic-resonance-imaging test rather than testify regarding the standard of care used by physicians in the same general neighborhood, as required by § 6-5^484(a), Ala.Code 1975.
However, Pruitt cannot be read as requiring that expert witnesses in every medical-malpractice action explicitly “establish the standard of care” at the summary-judgment stage. That premise was rejected in Rudolph v. Lindsay, 626 So.2d 1278 (Ala.1993), in which the Alabama Supreme Court reversed a summary judgment in favor of a psychiatrist, who the plaintiff alleged had negligently released a patient from a hospital; the patient had been admitted to the hospital for treatment of self-inflicted injuries, but committed suicide four days after his release. The patient’s administratrix submitted an affidavit in opposition to the psychiatrist’s summary-judgment motion; in that affidavit her expert witness opined that the psychiatrist had breached the minimum standard of care in his care and treatment of the decedent “by failing to assess the potential for suicide in light of the prior suicide attempt and his underlying psychosis,” and expressed the opinion “that the absence of proper evaluation and diagnosis by [the psychiatrist] in light of the prior suicide attempt and [the patient’s discharge] from the hospital absent suicide precautions” led to the patient’s death. 626 So.2d at 1280.
The Rudolph court concluded that that evidence constituted substantial evidence indicating that the psychiatrist had breached the standard of care, and the court distinguished Pruitt, at length:
“Pruitt ... was not a case involving a summary judgment; rather, in that case this Court reviewed the sufficiency of the deposition of the plaintiffs medical expert offered in support of the plaintiffs medical malpractice claim at trial. The trial court in Pruitt considered whether the plaintiffs medical evidence *511 was sufficient to meet the plaintiffs burden of proof in order to establish his case at trial. When the trial court determined that the plaintiffs medical expert’s deposition was insufficient to meet the plaintiffs burden, the plaintiff had nothing to support the case and declined to continue the trial. Because Pruitt was not a summary judgment case, there was no presumption, as there is in this case, requiring that the evidence be viewed most favorably to the nonmov-ant.
[[Image here]]
“Pruitt was unusual in that there was nothing in the testimony of the plaintiffs expert that explicitly or implicitly supplied substantial evidence of the standard of care. Absent some specific discussion of the nature of the ‘lack of communication’ that the plaintiff alleged resulted in a failure of appropriate medical care, there was nothing to support an inference as to what the defendant did or failed to do that constituted malprac-' tice. In most medical malpractice cases, the standard of care is sufficiently established by reference to particular acts of the defendant. Pruitt does not add a new element to the plaintiffs burden of proof under Ala. Code 1975, § 6-5-548; reference to an explicit failure to show a standard of care was warranted in Pruitt because of the particular deficiencies of the deposition relied on by plaintiff at trial to establish the requisite failure of appropriate medical care.
[[Image here]]
“... [The affidavit of the administra-trix’s expert] disagrees with [the psychiatrist’s] assertions as to the proper extent of evaluation before a patient’s release and disputes the correctness of [his] diagnosis. As in [the psychiatrist’s] affidavit, the standard of care is implicit in [the expert witness’s] assertion of what [the psychiatrist] should have done. Although [the expert witness] did not specifically state that he was familiar with the standard of care, his recitation of qualifications supports an inference that he is familiar with the appropriate standard. [The expert witness] stated in his affidavit that [the psychiatrist] breached the standard of care by ‘fading to assess the potential for suicide in light of the prior suicide attempt and his underlying psychosis.’ [The expert witness’s] affidavit also indicates that [the psychiatrist] breached the standard by failing to more fully evaluate the decedent in light of his prior suicide attempt and in discharging the decedent without instituting suicide precautions. The standard of care, the care that [the psychiatrist] should have provided, is sufficiently inferable from the substance of [the expert witness’s] affidavit.
“There is, therefore, a disagreement between these two medical experts ... as to the extent and quality of care that should have been delivered. This is exactly the material issue of fact that is reserved for the trier of fact.”
Rudolph, 626 So.2d at 1280-82.
While the dissent intimates that § 6-5-548(a), Ala.Code 1975, enacted in 1987, effectively imposes a standard-of-care establishment requirement upon a non-movant in the context of a summary judgment, as well as at trial, we note that Rudolph specifically cites to § 6-5-548 in reaching a contrary conclusion from that of the dissent. The Alabama Supreme Court has authoritatively construed § 6-5-548 such that “a disagreement between ... two medical experts ... as to the extent and quality of care that should have been delivered” will present a factual issue for resolution by the trier of fact, and we are bound by that construction. Section 12-3-16, Ala. Code 1975.
Here, as in Rudolph, the judgment being reviewed is a summary judgment; we therefore “must view the evidence in a light most favorable to the nonmovant,” Mr. Hempfleng. Hawkins, 676 So.2d at 340. In his affidavit, Dr. Harkness stated that he was familiar with the standard of *512 care expected of a general surgeon such as Dr. Smith with regard to informed consent; he further stated that he had reviewed the medical and hospital records concerning Mr. Hempfleng’s surgery. Dr. Harkness’s affidavit also indicated that the standard of care would require discussing, or at least mentioning, the specific risks or complications that are most commonly associated with a unilateral inguinal hernia repair involving a “traditional regional inci-sional approach” and employing prosthetic mesh, the procedure that Mr. Hempfleng ultimately underwent. Dr. Harkness stated that because the pertinent medical records did not indicate that Dr. Smith made such a disclosure, he concluded that Dr. Smith had failed to obtain Mr. Hemp-fleng’s informed consent and thereby had breached the standard of care.
Based upon the applicable precedent we have outlined, and in light of the facts appearing of record,[1] we conclude that Dr. Harkness’s affidavit, when viewed in a light most favorable to Mr. Hemp-fleng, sufficiently “established the standard of care” to warrant submitting to the trier of fact the issue whether Dr. Smith obtained Mr. Hempfleng’s informed consent. Moreover, we reject the dissent’s apparent contention that the boilerplate consent form signed by Hempfleng bars his bringing an informed-consent claim. An expert’s opinion that a patient’s medical file does not reflect disclosure of the specific complications associated with a particular surgical procedure, and that the absence of any such disclosure falls below the standard of care, creates a genuine issue of fact as to whether the patient’s consent was, in fact, informed. Thus, the trial court erred in entering the summary judgment in favor of Dr. Smith. That judgment is hereby reversed, and the cause is remanded for further proceedings.
REVERSED AJS1D REMANDED.
YATES, MONROE, and CRAWLEY, JJ., concur.
THOMPSON, J., dissents.

. Dr. Smith states, in his appellate brief, that he afforded Mr. Hempfleng a "verbal explanation of potential risks and complications”; however, the record does not support this statement. Because this court is bound by the record and cannot consider evidence or statements in a party’s brief that were not before the trial court (see, e.g., Ex parte American Resources Ins. Co., 663 So.2d 932, 936 (Ala.1995)), we may not reach the question whether a "verbal explanation” was provided or whether such an explanation would meet the pertinent standard of care.