MURDOCK, Judge,
dissenting.
As the majority notes,
“A landowner owes an invitee the legal duty ‘to exercise reasonable care and diligence to keep the premises in a reasonably safe condition for the uses contemplated by the invitation....’”
797 So.2d at 1102, quoting Shelton v. Boston Fin., Inc., 638 So.2d 824, 825 (Ala.1994). Where the plaintiff establishes that the defendant created the dangerous condition, the plaintiff need not introduce evidence indicating that the defendant had actual or constructive knowledge of that condition; notice is presumed under such circumstances. Nelson v. Delchamps, Inc., 699 So.2d 1259 (Ala.Civ.App.1997).
The issue in this case is whether the Millers presented substantial evidence that creates genuine issues of material fact as to whether Archstone or Southeastern breached their above-stated duty of reasonable care and whether the breach created a condition that caused Tara to slip and fall. I conclude from my review of the record that the evidence introduced by the Millers does create such genuine issues of material fact.
In its opinion, the majority begins its analysis by stating that Tara testified in her deposition that after the sealant had been applied, but before she fell on February 13, 1997, she had walked, without slipping, in the “same area of the parking lot” after it had rained, and that she had never noticed that “particular area” of the parking lot to be slick after it had rained. It is true that, at one point in her deposition, Tara did testify that she had walked in “the parking lot” prior to the fall and had not' noticed any problems. She further testified that after the sealant was applied, *1105 she had walked in the parking lot while it was raining or after it had rained, without slipping. I do not find in Tara’s testimony, however, any statement that, following the application of the sealant, she had walked in the particular area of the parking lot where she fell, after it had rained. Nor did she testify that she had walked in that particular area when the surface conditions were both cold and wet, as they were on the day she slipped.[1] As will be discussed below, these differences are significant because the particular area where Tara fell was steeply inclined and the manufacturer of the sealant had issued a warning against applying the sealant to steep inclines, as well as a warning that the sealant might become slippery under certain environmental conditions.
Next, the majority emphasizes that when Tara was asked in her deposition if she knew what caused her to fall, she answered “No.” In so doing, I believe the majority gives the wrong import to Tara’s response and improperly disregards other portions of her testimony.
Tara testified repeatedly throughout her deposition that she “slipped” on the asphalt parking lot in question. As a result, opposing counsel responded with a series of questions as to whether Tara had ever known of anyone else having “any problems slipping [or] sliding” on the surface in question. Clearly, opposing counsel understood Tara’s testimony to be that she had encountered a slippery condition on the asphalt parking lot. This is further illustrated by counsel’s series of questions regarding whether Tara had noticed the parking lot being “slick” before her fall. At one juncture, opposing counsel asked Tara: “Were there any other problems that you are complaining of here or making allegations of with the parking lot ... besides it being slick?” Tara specifically emphasized that it was a slippery condition that caused her to fall, when she further testified at her deposition:
“Q. As far as the cause of your falling, it was slipping and not tripping over something?
“A. Yes, it was slipping.
“Q. And when you said there are no defects in the parking lot, you are talking about potholes or something to trip over?
“A. Right.”
Thus, Tara’s deposition testimony cannot fairly be read as testimony that she did not know the immediate cause of her fall. She repeatedly testified that a slippery, or slick, condition was the cause. Only after a long series of questions in response to which Tara’s testimony to this effect was made clear was she ultimately asked by opposing counsel: “Do you actually know what caused you to fall?” The fact that she answered simply “no” must be read in conjunction with all her previous testimony. It can only be construed as testimony that at the time of her deposition, she had no personal knowledge of the ultimate cause of the slippery condition to which she had repeatedly testified prior to this question. See Malone v. Daugherty, 453 So.2d 721 (Ala.1984) (court considering summary-judgment motion may not view a portion of a witness’s testimony abstractly, independently, and separately from the balance of the witness’s testimony; testimony must be “viewed as a whole”); Hoomes v. International Harvester Co., 295 Ala. 16, 321 So.2d 657 (1975) (reversing summary judgment for failure of trial court to consider a witness’s deposition testimony in its entirety). See generally Hanners v. Balfour Guthrie, Inc., 564 *1106 So.2d 412 (Ala.1990) (court must review summary-judgment record in a light most favorable to the nonmovant and resolve all doubts against the movant).
The evidence in opposition to the summary-judgment motion also included testimony from Tara’s parents. Tara’s mother testified in her deposition: “The type of sealant that they put down on the parking lot, I feel like is too slick when it rains.” The fact that Mrs. Miller also testified that she had not noticed this problem before Tara’s injury may contribute to the creation of a factual issue for the jury, but it does not negate such an issue.
Furthermore, Tara’s father testified that a portion of the parking lot in question, which is on a hill, gets slippery when it rains. When asked if it had always been that way, Mr. Miller responded: “Not so much before they put the sealant down.” He further testified that, before the sealant was applied, he could not recall ever slipping on the parking lot, but that his truck had slipped since the sealant had been applied.
The majority focuses upon an answer by Mr. Miller to a single conclusory question as to any personal knowledge of the cause of Tara’s fall:
“Q. Did you learn afterwards what caused her to fall?
“A. As far as the cause, no. All I know is she slipped and fell.”
Even in this exchange, however, Mr. Miller obviously was not testifying that he did not know whether Tara’s fall was caused by a slippery condition. Rather, he simply was explaining, as was Tara in her deposition testimony, that he did not know at that time what ultimately had caused the slippery condition, itself, to exist.
The Millers also introduced circumstantial evidence as to the cause of the slippery condition. Much of this evidence is also probative as to whether the defendants breached their duty of care to the plaintiffs in applying the sealant to the hill where Tara slipped.
The manufacturer of the sealant had issued a written warning as follows:
“6.1....
“WARNING: Sealcoats, when improperly applied and/or under certain environmental conditions, may become slippery....
Moreover, not only does the manufacturer warn of slipperiness under adverse environmental conditions, it specifically adds an additional warning regarding the use of the sealant on “steep inclines”:
“10. WARNINGS and Miscellaneous Notes:
“10.1. Skid resistance: Sealcoats, when improperly applied and/or under certain environmental conditions, may become slippery.... Gem Seal does not recommend sealcoating asphalt pavements with the following characteristics: ... steep inclines .... ”
(Underlining added.)
There is ample deposition testimony that the particular area of the parking lot where Tara slipped and fell was on a hill. Consistent with this deposition testimony, Tara testified in her affidavit that the place she fell was a “steeply graded paved area.”[2]
In Bell v. Colony Apartments Co., 568 So.2d 805 (Ala.1990), no witness could testify directly as to the cause of an apartment fire. There was direct opinion testimony that the immediate cause of the fire *1107 had been an electrical discharge from certain wiring located in a crawl space between the first and second floors of the building. There was no direct testimony, however, as to what had caused the electrical discharge. Instead, there was merely testimony that before the fire a repairman working in the area had used an “electrician’s snake” to pull wires through the crawl space and that there was a “probability” that this activity had damaged the electrical wires. In reversing the trial court’s summary judgment, our Supreme Court emphasized that proof of negligence may be established “completely through circumstantial evidence ... if it can be reasonably inferred from the facts and circumstances adduced.” 568 So.2d at 810-11. See also Harris v. Flagstar Enters., 685 So.2d 760, 762 (Ala.Civ.App.1996); Hutto v. Gold’s Gym, Inc., 703 So.2d 974 (Ala.Civ.App.1996).
Similarly, in the present case, there is direct testimony that the immediate cause of Tara’s injury was the slippery condition she encountered. Likewise, there is circumstantial evidence as to what, in turn, caused this slippery condition. That circumstantial evidence includes evidence that: (i) the manufacturer warned that application of the sealant could create a slippery surface unacceptable for use on steep inclines; (ii) the manufacturer warned that the sealant could become slippery under certain environmental conditions; (iii) the sealant was in fact applied to a steep incline, on which Tara slipped; and (iv) there were adverse environmental conditions on the day Tara slipped on that steep incline, namely, cold, wet weather.
This circumstantial evidence is corroborated by the affidavit testimony of Tara. In her affidavit, Tara testified that she “slipped” and that she fell because of a “slippery surface.” Of more significance, Tara gave testimony in her affidavit tending to negate various possible alternative causes for the slippery condition:
“There were no apparent physical defects in the surface of the pavement, such as cracks, potholes, or uneven surfaces. There was no debris or other loose material, nor any obstruction that might cause someone to trip. There were no visible liquids on the pavement other than rain water.”[3]
The majority elects to ignore Tara’s affidavit, citing Scoggin v. Listerhill Employees Credit Union, 658 So.2d 376 (Ala.1995). As reiterated in Scoggin, “when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.” 658 So.2d at 380 (quoting Van T. Junkins & Assoc., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir.1984)).
For several reasons, I do not believe Tara’s affidavit testimony described above is disqualified under the Scoggin rule. First, Tara’s deposition testimony cannot fairly be construed as “negat[ing] the existence of any genuine issue of material fact.” She simply testified in her deposition that she did not know the reason for the slippery condition.[4]
*1108 Second, for the reasons explained above, Tara’s affidavit testimony that she “slipped” and that she fell because of a “slippery surface” is not in any way inconsistent with, much less contradictory of, her deposition testimony.
Third, Tara’s affidavit testimony noting the absence of any debris, loose material, or visible liquids other than rainwater does not “contradict, without explanation, previously given clear testimony.” Id. It merely notes the absence of alternative explanations for the slippery condition.[5] 'In so doing, it corroborates and gives more significance to the circumstantial evidence outlined above.
Viewing all of the evidence in the light most favorable to the nonmovants (the plaintiffs), and resolving all reasonable doubts against the movants (the defendants), as we must under the applicable standard of review (see Ex parte Dial Kennels of Alabama, Inc., 771 So.2d 419, 420-21 (Ala.1999)), I believe the plaintiffs adduced substantial evidence in support of their claims against the defendants. Substantial evidence is evidence from which “fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). In this case, I believe that fair-minded persons in the exercise of impartial judgment could reasonably infer that Tara Miller’s injuries from her slip and fall were caused by the defendants’ failure to heed the manufacturer’s warnings and their resulting application of the sealant to the steep incline upon which Tara slipped and fell. Therefore, I respectfully dissent from the affirmance.

. Tara testified in her affidavit that the particular path she had falten from the school bus to her apartment on the day in question was one that she had not walked before.

. This affidavit testimony does not ''contradict” Tara’s deposition testimony and therefore, in my opinion, should not be disqualified under the rule of Scoggin v. Listerhill Employees Credit Union, 658 So.2d 376 (Ala.1995).

. The record before the trial court contains no evidence from the defendants as to the presence of any of the causes negated by Tara’s testimony or as to any other possible causes for the slippery condition.

. Because Tara testified in her deposition that she did not know what caused the slippery condition, we would be one step closer to triggering the Scoggin rule if the genuine issue of material fact in this case was whether Tara had knowledge of the cause of that condition. The issue here, however, is the cause *1108 itself, not whether Tara had knowledge of the cause at the time she was injured.

. Tara also testified in her deposition that "there was no standing water” at the location where she slipped, only water to make the asphalt wet.